Goodman *et al. v.* United States (No. 525).[1]

MANUFACTURED FEATHER ARTICLES, WINGS, POMPONS, ETC.

The importation consisted of feathers, technically distinguished as quills and plumage, and they were manufactured as trimmings for women's hats. They might be appropriately described as either quills or feathers. It must, however, be presumed that paragraph 438, tariff act of 1909, was enacted in view of the construction that had been theretofore placed on a like clause in a previous tariff act, and articles such as make up the importation will accordingly be held to be included by intention as feathers under that paragraph and to be dutiable as such; and this the more certainly since the articles enumerated along with quills in paragraph 463 of the law do not point to their probable use in making up women's hats or bonnets.

United States Court of Customs Appeals, May 29, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7120 (T. D. 31027).

[Affirmed.]

*Joseph G. Kammerlohr* (*John Giblon Duffy* of counsel) for appellants.
*D. Frank Lloyd,* Assistant Attorney General (*Charles Duane Baker* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
The merchandise in question in this case consists of certain manufactured feather articles known as "wings," "pompons," "sweeps,"

etc. The articles as imported were entered to be applied as trimmings of women's hats, and were expressly manufactured for that purpose. They consist of feathers taken from the wings, tails, and other parts of birds, and are technically distinguished as quills and plumage.

The appraiser returned all of the articles as "ornamental feathers, manufactured feathers chief value." Duty was assessed thereon at 60 per cent under paragraph 438 of the tariff act of 1909, which paragraph reads as follows:

438. Feathers and downs of all kinds, including bird skins or parts thereof with the feathers on, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this section, twenty per centum ad valorem; when dressed, colored, or otherwise advanced or manufactured in any manner, including quilts of down and other manufactures of down, and also dressed and finished birds suitable for millinery ornaments, and artificial or ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this section, sixty per centum ad valorem; boas, boutonnieres, wreaths, and all articles not specially provided for in this section, composed wholly or in chief value of any of the feathers, flowers, leaves, or other materials or articles herein mentioned, sixty per centum ad valorem.

The importers protested against such classification, and rely upon the provision of paragraph 463 of said act, which reads as follows:

463. Manufactures of bone, chip, grass, horn, quills, india rubber, palm leaf, straw, weeds, or whalebone, or of which these substances or any of them is the component material of chief value, not specially provided for in this section, thirty-five per centum ad valorem; but the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separate fiber thereof; sponges made of rubber, forty per centum ad valorem; combs, composed wholly of horn, or composed of horn and metal, fifty per centum ad valorem.

Testimony was introduced upon the subject of the commercial meaning of the word "quills," but the testimony need not be recited at length, as we think the case resolves itself into a single question, and that one of law.

It is established, not only by the testimony but by the lexicographers, that the tail and wing feathers of a bird are appropriately described as quills. They are also described as feathers. So that it may be said that in the absence of other provisions of the statute the article in question might be classified, so far as it is composed of tail and wing feathers of a bird, as either quills or feathers. The testimony of the importer shows to our satisfaction that these articles are composed in chief value of the quill feathers. So we are left to a consideration of the question of which paragraph of this statute should control.

This question is one of some difficulty. Taking up the first section and its history, the argument is most persuasive that Congress intended by paragraph 438 to cover such merchandise as is here involved. The previous tariff act of 1897 containing the identical language of paragraph 438, excepting the concluding portion, which reads, "boas, boutonnieres, wreaths, and all articles not specially provided for in this section, composed wholly or in chief value of any of the feathers, flowers, leaves, or other materials or articles herein mentioned, sixty per centum ad valorem." Under the law as it previously existed, it was held by the Board of General Appraisers (T. D. 27888) and on appeal by the United States Circuit Court and Circuit Court of Appeals, in United States v. Berlinger (167 Fed. Rep., 800; T. D. 29577), that manufactures of feathers were not dutiable as feathers under the provisions of the act as it then stood, and that where metal was employed in the manufacture of such articles as are here under consideration, they were properly subject to duty under paragraph 193 of the act of 1897 as articles composed in part of metal.

With this interpretation of the former statute before it, the inference is very strong that Congress intended by the addition to paragraph 438 of the language above quoted to remove any doubt as to whether the articles should be assessed under the metal paragraph, and to bring them within paragraph 438. This conclusion would be irresistible if it were not for the contention which is made that the article in question is more specifically described by paragraph 463. The argument is this, that the word "quills" had a previous judicial interpretation in a case arising under paragraph 600 of the tariff act of 1894, in which quills appeared on the free list. It is true that in the case of United States v. Stearns (79 Fed. Rep., 953), it was held that the strong wing and tail feathers of a turkey are in ordinary speech known as quills and fall within the definition given in the various dictionaries, and that as paragraph 600 did not contain the qualifying words "not specially provided for," while paragraph 443 did contain said provision, the importation there in question should be admitted free.

On the other hand, it has also been held that the wing and tail feathers of certain birds are dutiable as feathers. See G. A. 1328 (T. D. 12832) and G. A. 1470 (T. D. 12919). So that Congress had before it a judicial construction of the word "quills" and also a judicial construction of the word "feathers," holding that articles such as those in question were appropriately classifiable as feathers. In other words, while quills had been held to include the wing and tail feathers of birds, it had also been held that they were appropriately described as feathers, and hence would

be clearly within the term "feathers of all kinds" as used in paragraph 438. ·

Both counsel invoke the rule that if the legislature uses words which have received a judicial interpretation, they are presumed to be used in that sense unless the contrary intent can be gathered from the statute. This is unquestionably a general rule. It is somewhat lessened, however, where the same language is no preserved, but is substantially varied. (2 Lewis's Sutherland Statutory Construction, sec. 399.)

In the present case it is to be noted that the words interpreted by the decision of the court in United States *v.* Stearns, *supra,* were "quills prepared." In the present act the legislation relates to "manufactures of quills," and from the connection in which the word is employed it might well relate to quills in a different sense. Paragraph 463 deals with "bone, chip, grass, horn, quills, india rubber, palm leaf, straw, weeds, or whalebone, or of which these substances or any of them is the component material of chief value, not specially provided for in this section." There is nothing provided for in this section which suggests manufactures to be used as articles of millinery or in the making up of hats or bonnets, whereas under paragraph 438 the articles there provided for are those used in making and ornamenting millinery, such as hats and the like. We think the intent of Congress was to include in paragraph 438 all articles of this class, and that as the language employed by the added portion of the section is appropriate for this purpose, it should be given that construction.

While the word "quills" is appropriate to describe the wing and tail feathers of a bird, yet this is not its sole use. It is given definitions by the lexicographers much narrower in scope, as for instance: In the Standard Dictionary, the third definition of quills is given as—

The hollow, horny, basal part or stem of a feather; a tube; barrel; calamus.

And in the Century Dictionary, the sixth definition is—

The hard, hollow, horny part of the scape of any feather, which does not bear barbs, and by which the feather is inserted in the skin; the calamus as distinguished from the rachis.

It will be noted that if this definition be applied to the word "quills" it designates an article of the same general character as those with which it is placed in connection in paragraph 463, and this leads to the conclusion that it was in this sense that Congress employed the word in that section.

The result reached by the Board of General Appraisers was the correct one, and the decision is *affirmed.*